Geoffrey C. Chackel, Esq., OSB# 155727
geoff@chackellaw.com
CHACKEL LAW, PC
11440 W. Bernardo Court, Suite 300
San Diego, CA 92127
Tel: 619.567.2454
Fax: 619.452.1212

Attorney for Defendant and Third-Party Plaintiff
Combined Communications, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JAMES FORTUNE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COMBINED COMMUNICATIONS, INC.,<br><br>　　　　Defendant. | Case No: 6:19-cv-01236-MC<br><br>**RESPONSE OF THIRD-PARTY PLAINTIFF COMBINED COMMUNICATIONS, INC., TO TRITON DIGITAL, INC.'S MOTION TO DISMISS THIRD-PARTY COMPLAINT**<br><br>**REQUEST FOR ORAL ARGUMENT** |
| COMBINED COMMUNICATIONS, INC.<br><br>　　　　Third-Party Plaintiff,<br><br>　v.<br><br>TRITON DIGITAL, INC., a Delaware corporation,<br><br>　　　　Third-Party Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..………………………………………………………….............i

I.      INTRODUCTION…………………………………………………………………….......1

II.     ARGUMENT……………………………………………………………………..............2

       A.      Triton's Rule 12(b)(6) Motion to Dismiss CCI's First and Second Claims Must Be Denied Because CCI States Valid Claims For Indemnification And Breach of Contract…………………………………………………….......2

            1.  CCI Plainly Alleges That Triton Provided The Content At Issue…………....3

            2.  The Terms Of The Agreement Require Triton To Provide Content For The Website....…………………………………………………………...5

            3.  The Terms Of The Agreement Do Not Exclude Triton From Providing Content.……………………………………………………………5

       B.      Triton's Rule 12(b)(2) Motion to Dismiss Based Upon a Lack of Personal Jurisdiction Must Be Denied – Triton's Purposeful Contacts With This District Justify Imposing Personal Jurisdiction…………………….………......6

            1.  Triton Has Purposefully Directed Its Activities Towards Oregon, Entered Into A Contract With An Oregon Corporation, Provided Services In Oregon And Advertised Its Products In Oregon…………….…………......8

            2.  The Claim At Issue Arises Out Of Triton's Provision Of Web Based Services In Oregon To An Oregon Corporation …………………………….9

       C.      Triton's Rule 12(b)(3) Motion to Dismiss For "Improper Venue" Must Be Denied Because a Rule 12(b)(3) Motion For Improper Venue Cannot Be Maintained And Venue Is Proper In This District……………………….......10

       D.      In The Event This Court Grants The Motion, Combined Communications Requests Leave to File a First Amended Third-Party Complaint..……………....14

# TABLE OF AUTHORITIES

**Cases**

Am. Licorice Co. v. Total Sweeteners, Inc.,
WL 892409 (N.D. Cal. 2014) ...................................................................................... 12, 13

Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 112 (1987) ............................ 8

Ashcroft v. Iqbal, 556 U.S. 662 678 (2009) ....................................................................... 3

Atlantic Marine Construction Co. v. United States District Court,
571 U.S. 49 (2013) ....................................................................................... 10, 11, 13

Auster Oil & Gas Inc., v. Stream, 764 F.2d 381, 386 (5th Cir. 1985) ................................ 3

Bauman v. DaimlerChrysler Corp., 579 F.3d 1088, 1094 (9th Cir. 2009) ......................... 7

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007) ...................................................... 3

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985) ........................................ 8

Conley v. Gibson, 355 U.S. 41, 45-46 (1957) .................................................................... 3

Continental Graphics v. Hiller Industries, 614 F.Supp. 1125, 1130-1131 (D. Utah 1985) ........... 12

Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009) ................................................. 3

F&D, Inc. v. O'Hara & Kendall Aviation, Inc., 547 F.Supp. 44, 45-46 (S.D. Texas 1982) ......... 12

Fiore v. Walden, 688 F.3d 558, 573 (9th Cir. 2012) ...................................................... 7, 9

Foundation Fitness Products, LLC v. Free Motion Fitness,
121 F.Supp.3d 1038, 1042-1046 (D. Or. 2015) ................................................................ 11

Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Circ. 1997) ................................... 3

Gleason v. Carter,
No. 3:12-CV-01265-HA, 2012 WL 4482372, at *4 n.1 (D. Or. Sep t. 25, 2012) ............... 7

Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir. 1986) ................................. 3

Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945) ............................................................ 7

J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780, 2800 n.8 (2011) ...................... 7

Lone Star Package Car Co. v. Baltimore & O. R. Co., 212 F.2d 147 (5th Cir. 1954) ..... 12

Maduka v. Sunrise Hosp., 375 F.3d 909, 911 (9th Cir. 2004) ........................................... 3

McGonigle v. Penn-Central Transportation Co., 49 F.R.D. 58, 60 (D.Md. 1969) ........... 13

Menken v. Emm., 503 F.3d 1050, 1058 (9th Cir. 2007) ..................................................... 9

Morrell v. United Air Lines Transport Corp., 29 F.Supp. 757, 759 (S.D.N.Y. 1939) .................13

Odette v. Shearson, Hammill & Co., 394 F.Supp. 946, 952 (S.D.N.Y. 1975)..............................13

Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995) .............................7

Pacific Reliant Indus., Inc. v. Amerika Samoa Bank, 901 F.2d 735, 737 (9th Cir. 1990) ...............7

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)..............................8

Sheasly v. Orr Feld Co., No. 10-956-PK, 2010 W1 4273230, at *9-10 (D. Or. 2010) .................10

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980)...................................8

United States v. Corinthian Colleges, 644 F.3d 984, 995 (9th Cir. 2011).....................................14

United States v. United Pacific Ins. Co., 472 F.2d 792, 794 (9th Cir. 1973) ................................12

United States v. Acord, 209 F.2d 709, 712 (10th Cir. 1954).....................................................12, 13

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,
433 F.3d 1199, 1205-06 (9th Cir. 2006)..........................................................................................8

## I. INTRODUCTION

In this Third-Party Complaint for Indemnification and Breach of Contract, Third-Party Plaintiff Combined Communications, Inc. ("CCI") seeks to recover damages arising out of Triton's posting of content on CCI's website that allegedly infringes the copyright of Plaintiff James Fortune. Triton's motion to dismiss for failure to state a claim, lack of personal jurisdiction and "improper forum" should be denied in its entirety.

With regard to Triton's Rule 12(b)(6) motion to dismiss for failure to state a claim, Triton argues (1) "CCI has no evidence that Triton supplied the [infringing] content" on CCI's website, (2) the Agreement did not require Triton to provide content for the website, and (3) The Agreement "specifically excludes" Triton from providing the service at issue. These arguments lack merit and should be rejected because, as explained below, CCI alleges that Triton did, in fact, provide the infringing content. Whether the agreement purportedly "excludes" content (and it doesn't) is not relevant because CCI alleges that Triton did provide the infringing content which triggered Triton's duty to defend and indemnify under the agreement. CCI has clearly stated claims for relief.

With regard to Triton's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, CCI has presented evidence establishing that Triton meets the applicable "minimum contacts" analysis. Specifically, Triton entered four different contracts with CCI, an Oregon corporation, for the creation, management and provision of content to four different Oregon based websites which are viewed and utilized in the Central Oregon market. Triton also routinely advertised its products in Central Oregon each week for ten years on four different Central Oregon radio stations. In addition, the claims alleged in the Third-Party Complaint arise directly out of Triton's Oregon based contacts because it was Triton's ongoing management, oversight and provision of content to an Oregon corporation's state based website that resulted in the original action for copyright infringement being filed.

Finally, Triton's Rule 12(b)(3) motion to dismiss based upon "improper venue" must be denied because Rule 12(b)(3) cannot be used as a basis to dismiss for improper venue based solely

upon a contractual forum selection clause. Instead, the proper basis to bring this motion is under a motion to transfer venue, which has not been noticed or filed by Triton.

Regardless, even if the merits are considered, venue is proper in this District for this Third-Party Complaint under the liberal provisions of Rule 14, which does not contain a venue provision and provides for the exercise of jurisdiction over Third-Party claims as ancillary to the original action between Plaintiff Fortune and Defendant CCI. As a result, ancillary venue can be found for the Third-Party Complaint so long as venue of the original action is proper—which is undisputed.

Transferring or dismissing this Third-Party Complaint under these circumstances would be contrary to the strong liberal policy of Rule 14 that all third party actions should be resolved in a single proceeding. All of the witnesses, documents and evidence relevant to Plaintiff Fortune's claim against CCI are identical to CCI's Third-Party Complaint against Triton. Thus, Triton's attempt to subvert Rule 14 would result in CCI being forced to conduct discovery, prepare for and prosecute *two separate trials on opposite ends of the country on the identical legal and factual issues*. The same witnesses that will travel from Central Oregon (or elsewhere throughout the country) to Eugene for trial in the original action will, subsequently, travel to New York to testify to the identical matter in a second trial. Likewise, two separate Federal courts would be required to manage and try the identical cases. In the event that Triton files a motion to transfer venue, CCI can provide further analysis and evidence regarding why this result should not be allowed but, as explained below, Triton has not filed the appropriate motion. Triton's motion should be denied.

II. **ARGUMENT**

A. **Triton's Rule 12(b)(6) Motion To Dismiss CCI's First And Second Claims Must Be Denied Because CCI States Valid Claims For Indemnification And Breach Of Contract.**

Triton argues that CCI fails to state a claim for indemnification and breach of contract because (1) "CCI has no evidence that Triton supplied the [infringing] content" on CCI's website, (2) the Agreement did not require Triton to provide content for the website, and (3) The Agreement "specifically excludes" Triton from providing the service at issue. (Motion to Dismiss,

pg. 5.) As explained below, Triton's arguments lack merit and mischaracterizations of the parties' Agreement. The motion must be denied.

The court should not grant a motion to dismiss for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no facts in support of the claim. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Federal Rules of Civil Procedure only requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is a liberal pleading standard that provides a "powerful presumption against rejecting pleadings for failure to state a claim." Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Circ. 1997) (quoting Auster Oil & Gas Inc. v. Stream, 764 F.2d 381, 386 (5th Cir. 1985). A motion to dismiss under Rule 12(b)(6) is disfavored and rarely granted. Hall v. City of Santa Barbara, 833 F.2d 1270, 1274 (9th Cir. 1986).

In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the district court must treat all of Plaintiff's allegations of material fact as true and must construe them in the light most favorable to the Plaintiff. Maduka v. Sunrise Hosp., 375 F.3d 909, 911 (9th Cir. 2004). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" Cousins v. Lockyer, 568 F.3d 1063, 1067 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The issue on a motion to dismiss for failure to state a claim is not whether the plaintiff will ultimately prevail or is even likely to prevail; it is instead whether the plaintiff facially states a claim and is entitled to offer evidence to support the claims asserted. Gilligan, 108 F.3d at 249; Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

1. CCI Plainly Alleges That Triton Provided The Content At Issue.

With regard to the allegation that CCI "has no evidence" that Triton supplied the infringing content, this is not a summary judgment motion where evidence is weighed or considered. Instead, under a Rule 12(b)(6) motion, the Court need only address the content of the Third-Party

Complaint and accept those allegations as true for purposes of this motion. When doing so, the Third-Party Complaint clearly alleges facts giving rise to claims for indemnification and breach of contract. Specifically, the Third-Party Complaint clearly alleges the following:

- That Triton agreed to provide the Webwise For Radio Service (the "Service") to CCI pursuant to a written Agreement. (Third-Party Complaint ¶ 6);
- The "Service provided by Triton consisted of website hosting and build-out along with audio and visual web content provided to CCI on www.kbnd.com" (Third-Party Complaint ¶ 7);
- That Triton did, in fact, provide "content to CCI within their Service known as 'viral videos,'" which consisted of Triton posting content on the Service that had gone 'viral' on the internet" and that Triton was *solely responsible* for that content (Third-Party Complaint ¶ 9);
- That Paragraph 13 of the Agreement requires Triton to indemnify CCI for providing infringing content: "[e]ach party agrees to indemnify the other against liability for any rights infringement related to content provided by the other party." (Third-Party Complaint ¶ 8);
- That Plaintiff James Fortune alleges CCI infringed on his copyright on a photograph that was posted to the "viral videos" section of its website which was controlled exclusively by Triton (Third-Party Complaint ¶ 10);
- That CCI did not post the allegedly infringing content (Third-Party Complaint ¶ 11); and
- Triton refused to accept CCI's tender of the defense and indemnification of Plaintiff James Fortune's lawsuit (Third-Party Complaint ¶ 12.)

The foregoing allegations consist of well plead facts that, when taken as true, sufficiently state a claim for relief for both indemnification and breach of contract.

2. The Terms Of The Agreement Require Triton To Provide Content For The Website.

Triton's claim the Agreement doesn't contemplate the provision of website content is patently false and defies logic. First, CCI has already alleged that Triton did, in fact, provide content through its website. (Third-Party Complaint ¶ 9; see also Declaration of Jeremy Groh ("Groh Decl.,") ¶¶ 1-8, filed in Support of CCI's Response to Motion to Dismiss.) This should put the issue to rest for purposes of the motion to dismiss because Triton specifically agreed to idemnify CCI for any damages resulting from website content it "provided." (Third-Party Complaint ¶ 8.) Thus, whether the Agreement specifically *requires* Triton to provide content is irrelevant because CCI alleges that Triton *did "provide"* content which triggered its duty to defend and indemnify under the Agreement.

Moreover, the Agreement itself contemplates that Triton will provide content to CCI. Specifically, the Agreement defines Triton's "Service" to CCI as: "(a) website design, navigation and build-out (b) *website hosting* (c) use of proprietary software for site updating and maintenance (d) *certain support services for Station*." (Agreement, ¶ 1) (emphasis added). The Agreement further expands the Services to include those identified on a "Service Schedule" (attached to the Agreement) which includes Triton's installation of various "tools" on the CCI website, including "the proprietary tools developed by Envisionwise." (Agreement, pg. 4.) The "proprietary tools developed by Envisionwise" includes the provision of content to CCI's website such as the "viral videos" portion of the CCI website—which is controlled by Triton. (Agreement ¶ 1 and referenced Service Schedule; Groh Decl., ¶¶ 1-8.) The Agreement also specifically states the Station website, software tools *and" content libraries"* will be hosted and made accessible via the Internet." Id. Both the "proprietary tools" and "content libraries" allow for Triton to provide its content to CCI as part of the "Service" under the Agreement. Id.

3. The Terms Of The Agreement Do Not Exclude Triton From Providing Content.

Triton argues dismissal is warranted because the Agreement "specifically excludes" it from providing "audio or video streaming" services to CCI. This contractual provision is irrelevant to

RESPONSE TO MOTION TO DISMISS THIRD-PARTY COMPLAINT 5

this dispute. Although the Agreement does exclude "audio or video streaming," the Third-Party Complaint *does not allege* that Triton provided "audio or video streaming" or that Plaintiff Fortune's Complaint alleges copyright violations for "audio or video streaming." Instead, Plaintiff Fortune alleges copyright violation in a single *photograph*, not audio or video content. CCI alleges that Triton posted the allegedly infringing *photograph* on its website through the Service. The Agreement does not exclude Triton from providing photographs or images as part of the Service and, in fact, CCI alleges that Triton *did* post photographs and images on its website as part of the Service.

Finally, adopting Triton's interpretation of the Agreement would render its indemnity terms meaningless and effectively re-write the Agreement which specifically requires *each party* "to indemnify the other against liability for any rights infringement related to content provided by the other party." (Agreement ¶ 13.) If Triton is not required to indemnify CCI for infringing content it *provided* solely because the Agreement is interpreted as excluding it from providing content to CCI, the contractual indemnity provision would be rendered meaningless and superfluous. A better interpretation of the Agreement, and one that is consistent with its overall context, is the parties clearly *did* contemplate that Triton would provide content to CCI on its website, because it was a negotiated term that "each party" would indemnify the other for infringement claims related to content "provided by" the other party, which naturally includes Triton. Because CCI alleges that Triton "provided" content to CCI, and the content "provided" by Triton infringed on Plaintiff's copyright, the indemnity provision should be enforced irrespective of the audio and video streaming exclusion.

B. **Triton's Rule 12(b)(2) Motion To Dismiss Based Upon A Lack Of Personal Jurisdiction Must Be Denied—Triton's Purposeful Contacts With This District Justify Imposing Personal Jurisdiction.**

Triton's motion includes a request to dismiss pursuant to Rule 12(b)(2) based upon a lack of personal jurisdiction. (Triton's Motion to Dismiss, pgs. 1 and 4.) The motion must be denied as CCI clearly has established grounds for this Court to exercise personal jurisdiction over Triton.

"Personal jurisdiction over a nonresident defendant is tested by a two-part analysis. First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Second, the exercise of jurisdiction must comport with federal due process." Bauman v. DaimlerChrysler Corp., 579 F.3d 1088, 1094 (9th Cir. 2009) (quotations omitted). "Oregon's long-arm statute confers jurisdiction to the outer limits of due process under the United States Constitution." Pacific Reliant Indus., Inc. v. Amerika Samoa Bank, 901 F.2d 735, 737 (9th Cir. 1990)(citation omitted). See also J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780, 2800 n.8 (2011)("State long-arm provisions allow the exercise of jurisdiction subject only to a due process limitation in . . . Oregon); Or. R. Civ. P. 4L. Oregon's long-arm statute, is co-extensive with the limits of due process. Gleason v. Carter, No. 3:12-CV-01265-HA, 2012 WL 4482372, at *4 n.1 (D. Or. Sept. 25, 2012).

"The due process analysis, in turn, centers on whether [a nonresident defendant] has 'certain minimum contacts' with [the forum state], such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Fiore v. Walden, 688 F.3d 558, 573 (9th Cir. 2012) (citing Int'l Shoe Co. v. Wash., 326 U.S. 310, 316 (1945)).

A court has specific jurisdiction over a defendant "if the controversy [was] sufficiently related to or arose out of the defendants' contacts with the forum." Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995). The Ninth Circuit applies the following three-part test to determine whether a district court constitutionally may exercise specific jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205-06 (9th Cir. 2006)(quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)).

"If the plaintiff fails to satisfy either of [the first two] prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)). As discussed below, there is no dispute that Third-Party Plaintiff CCI has satisfied the first two prongs of the minimum contacts analysis and met its burden under applicable law.

    1.    <u>Triton Has Purposefully Directed Its Activities Towards Oregon, Entered Into A Contract With An Oregon Corporation, Provided Services In Oregon And Advertised Its Products In Oregon.</u>

The Supreme Court has held personal jurisdiction over an out-of-state corporation may be appropriate when that corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980). Actions showing purposeful direction may include "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Asahi, 480 U.S. 102, 112 (1987). It is sufficient the placement of a product in the stream of commerce as long as the company was aware that the product was being marketed in the forum state. *Id.* at 117.

Here, Triton entered the Agreement with CCI, an Oregon corporation that required Triton to provide the "Webwise for Radio" service to CCI *in Oregon* for an Oregon radio station that broadcasts solely to Oregon residents. (Declaration of Jeremy Groh ("Groh Decl.,") ¶¶ 1-2, filed in Support of the Response to Motion to Dismiss.) Moreover, in exchange for providing the Service, Triton received 35 minutes *per week* of commercial advertising for Triton products on CCI's radio

station, KBND, which did in fact broadcast Triton's advertising messages to the Central Oregon marketplace every week *for the last ten years*. (Groh Decl., ¶ 3.)

In addition, Triton entered identical Webwise Station Affilliation Agreements with three other Central Oregon radio stations owned by CCI from approximately 2010 through the present day. (Groh Decl., ¶ 5.) For each of these Station Affiliation Agreements, Triton again provided the same service to these Oregon radio stations and received regular weekly commercial advertising of its products to the Central Oregon marketplace over the past ten years. (Groh Decl., ¶¶ 5-8.)

Entering four different contracts with an Oregon corporation for the creation and management of four different Oregon based websites, providing content to four different Oregon based websites which are viewed and utilized in the Central Oregon market, and then advertising Triton products directly to the Central Oregon market over a ten-year period on four different Central Oregon radio stations certainly satisfies the minimum contacts requirement that Triton purposefully availed itself of conducting business in the State of Oregon. Triton's motion to dismiss for lack of personal jurisdiction should be denied.

    2.    <u>The Claim At Issue Arises Out Of Triton's Provision Of Web Based Services In Oregon To An Oregon Corporation.</u>

Under the second prong of the personal-jurisdiction analysis, the plaintiffs' claim must be one that arises out of or relates to the defendant's forum-related activities. <u>Fiore</u>, 688 F.3d at 582 (citing <u>Menken v. Emm</u>, 503 F.3d 1050, 1058 (9th Cir. 2007)). The Ninth Circuit has adopted a "but for" analysis to determine whether a plaintiff's claim arises out of a defendant's forum-related activities. <u>Id</u>. CCI can easily establish it would not have been injured "but for" Triton's activities in Oregon.

Here, the Third-Party Complaint at issue arises directly out of Triton's forum related activities of providing the "Service" to CCI, which includes providing content on the CCI website to Central Oregon residents. (Groh Decl., ¶¶ 1-4.) Specifically, the underlying Complaint filed by Plaintiff Fortune alleges that CCI violated Plaintiff's copyright in a single photograph that was

broadcast on its website, "kbnd.com." CCI's Third-Party Complaint against Triton alleges its website was managed and controlled in Central Oregon by Triton through the Webwise For Radio service rendered in Oregon and that Triton is therefore liable for posting the allegedly infringing content *in Oregon* to the Oregon market. "But for" Triton's provision of the Service in Oregon, Plaintiff Fortune would not have sued CCI in Oregon and CCI would not have filed a Third-Party Complaint seeking defense and indemnity. This Court has sufficient grounds to exercise personal jurisdiction over Triton.

C. **Triton's Rule 12(b)(3) Motion To Dismiss For "Imroper Venue" Must Be Denied Because A Rule 12(b)(3) Motion For Improper Venue Cannot Be Maintained And Venue Is Proper In This District.**

Triton moves to dismiss the entire Third-Party Complaint based upon improper venue pursuant to Federal Rule 12(b)(3) because "venue is improper under the parties' Agreement," i.e., a forum selection clause. Triton's motion must be denied for two reasons: (1) Rule 12(b)(3) cannot be used to challenge venue based upon a contractual forum selection clause, and (2) even if the merits are considered, a Third-Party Complaint cannot be challenged on venue grounds so long as venue is proper in the main action. Each is discussed below.

As an initial matter, Triton's motion must be denied because Rule 12(b)(3) cannot be used to challenge venue based upon a contractual forum selection clause. Specifically, Triton cites Sheasly v. Orr Feld Co., No. 10-956-PK, 2010 Wl 4273230, at *9-10 (D. Or. 2010) as authority for the premise that "[w]hile transfer is appropriate in some cases of improper venue, 'Courts have, however, deemed dismissal preferable to transfer where, e.g., the plaintiff's case is extremely weak (and no statute of limitations issue is apparent) . . . or where the plaintiff deliberately filed in the wrong venue." Triton is wrong on the law and the facts and the motion must be denied.

Triton's 2010 case authority is no longer valid for this premise because the United States Supreme Court in Atlantic Marine Construction Co. v. United States District Court, 571 U.S. 49 (2013) unanimously held that a Rule 12(b)(3) motion to dismiss for "improper venue" based upon

a contractual forum selection clause cannot be maintained as a matter of law:

> Atlantic Marine contends that a party may enforce a forum-selection clause by seeking dismissal of the suit under § 1406(a) and Rule 12(b)(3). We disagree. Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is "wrong" or "improper." Whether venue is "wrong" or "improper" depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause.

Atlantic Marine, 571 U.S. at 55.

Instead of a Rule 12(b)(3) motion, the Atlantic Marine Court held that if venue is otherwise proper under 28 U.S.C. § 1391, then the sole procedure for challenging venue based upon a contractual forum selection clause is through a motion to transfer venue under 28 U.S.C. § 1404(a). Atlantic Marine, 571 U.S. at 59-60 (holding "[a]lthough a forum-selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a) or Rule 12(b)(3), the clause may be enforced through a motion to transfer under § 1404(a).") The holding in Atlantic Marine has been acknowledged and applied in this District when denying similar Rule 12(b)(3) motions to dismiss based upon a mandatory contractual forum selection clause. See, e.g., Foundation Fitness Products, LLC v. Free Motion Fitness, 121 F.Supp.3d 1038, 1042-1046 (D. Or. 2015) (denying motion to dismiss under Rule 12(b)(3) based upon forum selection clause because motion not filed as motion to transfer under § 1404(a) and transfer considerations not addressed by moving party). Triton's motion to dismiss pursuant to Rule 12(b)(3) must be denied because it is the incorrect basis to challenge venue of the Third-Party Complaint. Furthermore, Triton's motion to dismiss should not be construed as a motion to transfer venue because it has not cited that statutory provision and has not even requested a transfer or provided any legal or factual authority to justify a transfer under applicable law—CCI cannot oppose a motion that has not been filed or noticed.

Regardless, even if this Court considers the merits of Triton's argument, venue of CCI's Third-Party Complaint is proper under Rule 14, which must be construed in light of the policy goals of the Federal Copyright Act's venue provisions that limit venue to a judicial district where

a defendant resides or may be found. 28 U.S.C. §1400(a).

Congress demonstrated the importance of deciding all claims in a single action by adopting the liberal impleader provisions of Rule 14 of the Federal Rules of Civil Procedure which allows a defendant to implead another party who is or may be liable for any part of the defendant's liability, at any time after the plaintiff brings suit. The purpose of this rule is to adjudicate the rights of all interested parties at once, and in a single forum. United States v. Acord, 209 F.2d 709, 712 (10th Cir.), cert. denied, 347 U.S. 975 (1954).

Thus, CCI's Rule 14 Third-Party Complaint against Triton is considered ancillary to the original action and is not subject to an independent venue requirement similar to issues of ancillary jurisdiction over such claims. See United States v. United Pacific Ins. Co., 472 F.2d 792, 794 (9th Cir. 1973) (holding "regardless of the absence of diversity of citizenship or of a federal question in the ancillary suit," a court has ancillary jurisdiction over "third-party claims . . . if the claims arise out of the subject matter of the original action and involve the same persons and issues, or if they arose out of the same 'transaction or occurrence'" (citations omitted)); United States v. Accord, 209 F.2d 709, 712 (10th Cir. 1954) (holding that venue in Third-Party Complaint against United States depends or rests upon venue in the original proceeds and Rule 14 takes precedence over separate venue provisions of the Federal Tort Claims Act); Lone Star Package Car Co. v. Baltimore & O. R. Co., 212 F.2d 147 (5th Cir. 1954); Am. Licorice Co. v. Total Sweeteners, Inc., WL 892409 (N.D. Cal. 2014) (holding Rule 14 impleader takes precedence over contractual forum selection clause and provides basis for venue of Third-Party complaint); Continental Graphics v. Hiller Industries, 614 F.Supp. 1125, 1130-1131 (D. Utah 1985) (holding "Independent venue need to be met where, as here, third parties are brought into litigation ancillary to the pending suit" under Rule 14); F&D, Inc. v. O'Hara & Kendall Aviation, Inc., 547 F. Supp. 44, 45-46 (S.D. Texas 1982) (holding the 5th Circuit "has long held that Rule 14 of the Federal Rules of Civil Procedure overrides the general venue statute, 28 U.S.C. § 1391, and that an impleaded Third-Party defendant may not raise the venue issue");

"[I]f venue is properly laid in the principal action, a third-party defendant impleaded under

Rule 14(a) may not successfully raise the defense that venue would be improper in an original action by the third-party plaintiff against the third-party defendant." Odette v. Shearson, Hammill & Co., 394 F.Supp. 946, 951-952 (S.D.N.Y. 1975), see also Am. Licorice Co. v. Total Sweeteners, Inc., WL 892409 (N.D. Cal. 2014). "The courts have held that the reasoning which supports ancillary subject matter jurisdiction over a third-party claim also supports ancillary venue." Odette, 394 F.Supp. at 952, citing McGonigle v. Penn-Central Transportation Co., 49 F.R.D. 58, 60 (D.Md.1969) and 6 C. Wright and A. Miller, Federal Practice and Procedure § 1445. "Specifically, the purpose of the Federal Rules is to "simplify and expedite procedure." Consistent with this, "the purpose of Rule 14 was to accomplish in one proceeding the adjudication of the rights of all persons concerned in the controversy." Id., citing United States v. Acord, 209 F.2d 709, 712 (10th Cir.), cert. denied, 347 U.S. 975 (1954). "[T]he spirit and purpose of Rule 14 to a great extent would be frustrated if the venue statutes had to be applied to third-party proceedings under the Rule." Id., citing Morrell v. United Air Lines Transport Corp., 29 F.Supp. 757, 759 (S.D.N.Y. 1939). Thus, "if venue is proper in the principal action, there need be no independent basis for venue in the third-party claim." Odette v. Shearson, Hammill & Co., 394 F.Supp. 946, 952 (S.D.N.Y. 1975).

Here, venue of the original Complaint is proper under the Federal venue statute of 28 U.S.C. § 1391 (b) (1) and (2) because CCI "resides" in Oregon for purposes of venue law due to its corporate residency being in Oregon. Furthermore, venue is appropriate in this District pursuant to the Copyright Act's independent venue provision requiring a copyright infringement action to be brought "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. §1400(a). Thus, pursuant to Rule 14, CCI can maintain a Third-Party Complaint against Triton in this district without any independent basis for venue and the policy goals of Rule 14 are furthered by this result because the Complaint and Third-Party Complaint derive out of the identical operative set of facts and legal issues—these claims should be resolved together in a single proceeding irrespective of the standards imposed by Atlantic Marine as that decision should not be extended to, and did not consider, issues of ancillary jurisdiction and venue raised by Rule 14

RESPONSE TO MOTION TO DISMISS THIRD-PARTY COMPLAINT     13

Third-Party Complaints.

Finally, allowing Triton to dismiss or transfer this Third-Party Complaint would be contrary to the foregoing policies and work an extreme hardship on CCI. All of the witnesses, documents and evidence relevant to Plaintiff Fortune's claim against CCI are identical to CCI's Third-Party Complaint against Triton. Thus, ignoring Rule 14 under these circumstances would result in CCI being forced to conduct discovery, prepare for and prosecute two separate trials on opposite ends of the country on the identical legal and factual issues. In this event, every policy consideration supporting the liberal application of Rule 14 would be lost, two separate Federal courts would be required to manage and try the identical case and CCI would be irreparably damaged. In the event that Triton files a motion to transfer venue, CCI can provide further analysis and evidence regarding why this result should not be allowed but, as explained above, Triton has not filed the appropriate motion and that issue has not been presented for adjudication.

**D.** **In The Event This Court Grants The Motion, Combined Communications Requests Leave To File A First Amended Third-Party Complaint.**

Leave to amend "shall be freely given when justice so requires." Fed. Rule. Civ. Proc. 15(a). The standard for granting leave to amend is "generous" and as a practical matter leave is almost always granted. <u>United States v. Corinthian Colleges</u>, 644 F.3d 984, 995 (9th Cir. 2011). In the event this Court grants any aspect of Defendant's motion to dismiss, Plaintiff seeks leave to file a First Amended Complaint to cure any such perceived pleading defect.

Dated: December 17, 2019                        CHACKEL LAW, PC

                                                             s/ Geoffrey C. Chackel
                                                             GEOFFREY C. CHACKEL, Esq.
                                                            Attorney for Defendant and Third-Party
                                                            Plaintiff Combined Communications, Inc.

CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2019, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court, District of Oregon, via the CM/ECF system. Participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

Dated December 17, 2019.

                                            CHACKEL LAW, PC

                                            s/ Geoffrey C. Chackel
                                            Geoffrey C. Chackel, Esq., OSB# 155727
                                            Attorney for Defendant Combined Communications, Inc.