IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

JAMES FORTUNE,

    Plaintiff,

  v.

COMBINED COMMUNICATIONS, INC.,

    Defendant

_____

COMBINED COMMUNICATIONS, INC.,

    Third-Party Plaintiff,

  v.

TRITON DIGITAL, INC., a Delaware Corporation,

    Third-Party Defendant.

_____

No. 6:19-cv-01236-MC

**OPINION AND ORDER**

**MCSHANE, Judge:**

Third-Party Plaintiff Combined Communications, INC ("CCI") brings this action for contractual indemnification and breach of contract against Third-Party Defendant Triton Digital, Inc. ("Triton"). Triton moves to dismiss CCI's Third-Party Complaint ("TPC") for failure to state a claim, lack of personal jurisdiction, and improper venue. Because CCI provides the "short and plain statement" stating a claim for relief, and because there are sufficient contacts between Triton and the District of Oregon for both personal jurisdiction and proper venue, Triton's motion to dismiss, ECF No. 22, is DENIED.

## BACKGROUND

CCI, an Oregon corporation, operates a radio station in Bend, Oregon. TPC ¶ 5. In 2010, CCI entered into a Webwise Station Affiliation Agreement (the "Agreement") with Triton, TPC Ex. A. Under the Agreement, Triton would provide certain website building services (the "Service"), including providing website design and maintenance, hosting, navigation, and "certain support services" for CCI.[1] Agreement ¶ 1. The Service included "Website Hosting," where Triton agreed to provide and host a "Station website, software tools and content libraries[.]" Agreement Ex. A, 1. The Service also included the "use of proprietary software for site updating and maintenance." Agreement ¶ 1. In exchange for providing the Service, CCI agreed to provide 35 minutes of commercial broadcasting per week for Triton. Agreement ¶ 2.a.

The Agreement provided that, "Each party agrees to indemnify the other against liability for any rights infringement related to content provided by the other party." Agreement ¶ 13. Additionally, each party agreed to indemnify the other for any damages relating from that party's breach of the Agreement. Agreement ¶¶ 14-15.

---

[1] Triton subcontracted Envicionwise Web Services to provide the Service. Agreement ¶ 1.

In August 2019, Plaintiff James Fortune sued CCI for copyright infringement. TPC ¶ 10. Fortune alleges "CCI's station, KBND, posted a single infringing photograph on its website www.kbnd.com of singer Robert Plant holding a dove." TPC ¶ 10. CCI then filed the TPC against Triton for indemnification and breach of contract.

CCI alleges that "During the term of the Agreement, Triton provided content to CCI within their Service known as 'Viral Videos,' which consisted of Triton posting content on the Service that had gone 'viral' on the internet." TPC ¶ 9. CCI alleges that if, as alleged in the Complaint, the alleged infringing photograph was posted on the "Viral Video" section of its website, this "content [was] posted solely by, and the responsibility of, Triton." TPC ¶ 10. Triton refused to indemnify CCI from Plaintiff James Fortune's claims. TPC ¶¶ 12, 17.

## DISCUSSION

Triton moves to dismiss the complaint first for failure to state a claim. Triton next moves to dismiss for lack of personal jurisdiction. Finally, Triton moves to dismiss for improper venue. The Court addresses each argument in turn.

### I.    **Failure to State a Claim**

Triton argues CCI has failed to plead specific factual allegations necessary to survive a motion to dismiss. Instead, Triton argues:

> CCI relies on the unsupported assertion that it was Triton who provided the allegedly infringing content to the website, www.kbnd.com. CCI has no evidence that Triton supplied the content. CCI's reasoning is circular: CCI argues that since CCI allegedly did not provide the content, Triton must have provided the content. CCI's allegations are purely conclusory, have no factual support, and are contradicted by the plain terms of the parties' agreement.

Third-Party Def.'s Mot. 5 (internal footnote omitted). The Court disagrees.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint requires a "short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain sufficient factual allegations that "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678. At this stage, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

First, the Court notes that while Triton argues that "CCI has no evidence that Triton supplied the content," Def.'s Mot. 5, whether CCI will discovery evidence to support its claim is beyond the scope of a motion to dismiss under rule 12(b)(6). At this stage, rather than submit evidence, a plaintiff need only allege specific factual allegations that "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The focus here is on allegations, not evidence.[2]

More importantly, CCI alleges more than a mere allegation that because it did not provide the content, Triton did. First, CCI alleges that "Triton provided content to CCI within their Service known as 'Viral Videos,' which consisted of Triton posting content on the Service that had gone 'viral' on the internet." TPC ¶ 9. Further, that "Triton exercised control over, and was responsible for, the content contained in the Viral Videos portion of the Service." TPC ¶ 9. Finally, that an "allegedly infringing image" was posted to the Viral Videos section of Triton's Service of which "Triton is solely responsible." TPC ¶¶ 16, 21. Although Triton notes the TPC

---

[2] Relatedly, the Court agrees with Triton that the sworn declaration submitted with CCI's response goes beyond the scope of documents the Court may review when considering a motion to dismiss.

does not contain a specific allegation regarding the specific date Triton allegedly posted the photograph to the website, the Court is unaware of any legal precedent requiring a complaint to contain such specific allegations. At this stage, it is enough that CCI alleges that "Triton exercised control over, and was responsible for, the content contained in the Viral Videos portion of the Service." TPC ¶ 9.

Second, contrary to Triton's argument, CCI's allegations are not "contrary to the plain terms of the parties' agreement." Third-Party Def.'s Mot. 5. The Agreement provides that Triton (through a subcontractor) agreed to provide "(a) website design, navigation and build-out (b) website hosting (c) use of proprietary software for site updating and maintenance (d) certain support services for Station." Agreement, ¶ 1. Triton agreed to provide "content libraries" it would host and make accessible via the Internet. Agreement, Ex. A, 1. Finally, under the Agreement, "Each party agrees to indemnify the other against liability for any rights infringement related to content provided by the other party." Agreement, ¶ 13.

Triton is correct in pointing out that the Agreement expressly excludes "audio or video streaming[.]" Agreement, Ex. A, 2. However, the TPC alleges the claim for Copyright Infringement stems from "a single infringing photograph" posted on CCI's website. TPC ¶ 10. Although it is alleged that the photograph was posted "in the 'Viral Videos' section" of the website, TPC ¶ 11, at this stage it is plausible that the photograph does not fall under the audio or video streaming exclusion.

CCI alleges specific factual allegations that "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. It has done more than simply recite legal conclusions and the claims, taken in a light most favorable to CCI, show more than "the mere possibility of misconduct" by Triton. *Iqbal*, 556 U.S. at 678.

## II. Specific Personal Jurisdiction

Triton also moves to dismiss under rule 12(b)(2) for lack of personal jurisdiction. Oregon law authorizes personal jurisdiction to the full extent permitted by the Due Process Clause of the U.S. Constitution. *See* Or. R. Civ. P. 4L. To comport with the requirements of due process, a court may only exercise personal jurisdiction over a non-resident defendant (like Triton) if that defendant has sufficient "minimum contacts" with the forum state, such that the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotation marks omitted).

In the Ninth Circuit, courts apply a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citation and quotation marks omitted). A plaintiff bears the burden of establishing the first two elements of the test, after which the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Burger King Corp. v. Rudzewic*, 471 U.S. 462, 477 (1985).

With respect to the first element, which examines the nature of a defendant's contacts with the forum state, the Ninth Circuit generally analyzes cases sounding in tort and contract differently. *Doe v. Unocal*, 248 F.3d 915, 924 (9th Cir. 2001). As relevant here, cases sounding in contract are analyzed under a "purposeful availment" standard. *Id.* The purposeful availment

standard focuses on "whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988). Specifically, to have purposefully availed itself of conducting activities in the forum, a defendant must have "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Sher v. Johnson*, 9111 F.2d 1357, 1362 (9th Cir. 1990). This focus on the "affirmative conduct of the defendant is designed to ensure that the defendant is not haled into court as a result of random, fortuitous, or attenuated contacts." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990).

      A showing that the defendant purposefully availed itself of the privilege of conducting activities in the forum state "typically consists of the defendant's actions in the forum," such as "executing a contract there" or conducting "other business" within the state. *Schwarzenegger*, 374 F.3d at 802. The formation of a single contract with a resident of the forum state is "not, *standing alone*, sufficient to create jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) (citing *Burger King Corp.*, 471 U.S. at 478) (emphasis added). Instead, the contract must arise from a defendant's solicitation of business in the forum state, *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222–23 (1957), or otherwise give rise to or reflect a "substantial connection" with the state and create "continuing obligations" between the defendant and a resident of the forum, *Burger King Corp.*, 471 U.S. at 475–76. It is these circumstances surrounding a contractual relationship, including "prior negotiations[,] contemplated future consequences, . . . the terms of the contract[,] . . . and the parties' actual course of dealing," which dictate whether a defendant has sufficient minimum contacts with a forum state. *Burger King Corp.*, 471 U.S. at 479.

In *Burger King*, for example, the Supreme Court found jurisdiction where the defendant entered a contract with a forum-state resident and negotiated a "carefully structured 20-year relationship that envisioned continuing and wide-reaching contacts with [plaintiff] in [the forum state]." 471 U.S. at 480. In doing so, it was careful to distinguish the defendant's repeated contacts arising out of this deliberately-structured arrangement from "single or occasional acts" of a "nature and quality" reflecting only "attenuated affiliation with the forum." *Id.* at 475 n.18 (citation and quotation marks omitted).

With regards to the first part of the test, CCI's allegations demonstrate Triton directed its activities towards Oregon and availed itself of the privileges and laws of Oregon. Triton entered into a contract in 2010 with CCI, an Oregon corporation, to provide website services. TPC ¶ 6. The Agreement requires Triton to provide Services for CCI's radio station operating in Bend, Oregon. TPC ¶ 5. In return for the website services that would be used and viewed in the Central Oregon market, CCI provided Triton with 35 minutes a week of commercial advertising for Triton products on KBND. Agreement ¶ 2(a). The Agreement required Triton to provide a "Complete Design Update" to the website every 12 months. Ex. A, 1. The Agreement has been in force for nine years, TPC ¶ 7, and the relationship between Triton and CCI was meant to be a long one that would give rise to "continuing obligations" between the two parties, *Burger King,* 471 U.S. at 476.

With respect to the second part of the test, this claim arises out of the alleged breach of an Agreement signed by both parties, through which Triton was obligated to provide website services to CCI, an Oregon corporation, and in return CCI would play advertisements for Triton products to Oregon listeners. Agreement, ¶¶ 1–2. Triton allegedly breached the contract when it posted an infringing photograph to the website of an Oregon based corporation, and then refused

to indemnify CCI for the ensuing litigation. Third-Party Pl. Compl., ¶¶ 16–17. The claim clearly arises out of Triton's activities in this forum.

Finally, other than pointing to the forum selection clause discussed below, Triton presents no argument that jurisdiction in Oregon is unreasonable. *See Burger King*, 471 U.S. at 477 (burden shifts to defendant at step three to "present a compelling case" that jurisdiction is unreasonable). Triton fails to demonstrate this Court lacks personal jurisdiction.

### III. **Improper Venue**

Triton argues that because the Agreement in question contains a forum-selection clause which states in part that any action arising from the Agreement will be submitted to "the [exclusive] jurisdiction of the Federal or State courts located in New York County," that New York is the proper venue for this complaint. Third-Party Def.'s Mot., 6. Triton invokes Rule 12(b)(3) for its argument that Oregon is an "improper" venue, and as such the complaint should be dismissed. Triton cites to *Sheasly v. Orr Felt Co.* in support of its argument that "[c]ourts have . . . deemed dismissal [of a complaint for improper venue] preferable to transfer where, *e.g.*, the plaintiff's case is extremely weak . . . or where the plaintiff deliberately filed in the wrong venue." No. 10-956-PK, 2010 WL 4273230, at *11. Triton argues dismissal is warranted because "CCI explicitly contracted to limit jurisdiction and venue over the Agreement to New York, then deliberately filed this third-party complaint" in an Oregon jurisdiction. Third-Party Def.'s Mot., 6. However, the Court finds that *Sheasly* is inapplicable to the facts here.

Whether venue is "improper" in terms of a 12(b)(3) motion to dismiss is governed by 28 U.S.C. § 1391. That section governs "the venue of all civil actions brought in district courts of the United States" unless "otherwise provided by law." §§ 1391(a), 1391(a)(1). Section 1391(b)(2) provides a civil action may be brought in, "a judicial district in which a substantial

part of the events or omissions giving rise to the claim occurred[.]" When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If so, venue is proper; if it does not, venue is improper, and the case must be dismissed[.]" *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. Of Texas*, 571 U.S. 49, 56 (2013). As the alleged infringement occurred on the website of an Oregon company broadcasting in Central Oregon, venue is proper under § 1391(b)(2). Therefore, the Court must consider whether the Agreement's forum selection clause requires dismissing the action despite § 1391(b)(2).

In *Atlantic Marine*, Atlantic Marine Construction Co., a Virginia Corporation, entered into a subcontract with J-Crew Management, Inc., a Texas corporation for work on a child-development center built in Texas. 571 U.S. at 53. The subcontract contained a forum-selection clause which required that any dispute between the parties be "'litigated in the Circuit Court for the city of Norfolk Virginia, or in the United States District Court for the Eastern District of Virginia, Norfolk Division.'" *Id.* When a dispute arose between Atlantic Marine and J-Crew, J-Crew filed instead in the Western District of Texas. Atlantic Marine moved to dismiss, "arguing that the forum-selection clause rendered venue in the Western District of Texas . . . 'improper' under . . . 12(b)(3)." *Id.* The Supreme Court disagreed. Instead, the Court concluded that "[w]hether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories listed in § 1391(b). As a result, a case filed in a district that falls within § 1391 may not be dismissed under . . . Rule 12(b)(3)." *Id.* at 56.

The Agreement contains a forum-selection clause requiring disputes to be brought under the jurisdiction of New York. Agreement, ¶ 18. As discussed above, venue in the District of

Oregon is proper here under § 1391(b)(2). As venue in Oregon is proper under § 1391, the complaint may not be dismissed through a 12(b)(3) motion.[3] *Atlantic Marine*, 571 U.S. at 56.

## CONCLUSION

Triton's motion to dismiss for failure to state a claim, lack of personal jurisdiction, and improper venue, ECF No. 22, is DENIED.

IT IS SO ORDERED.

DATED this 4th day of February, 2020.

/s/ Michael McShane
Michael McShane
United States District Judge

---

[3] In its Reply, Triton requests that the Court transfer this case to New York pursuant to the Agreement's forum selection clause. This request is DENIED as the Complaint and TPC are derived of the same legal and factual issues.